JULIUS BERKMAN, PLAINTIFF-APPELLANT, v. JOSEPH E. COHN AND SAUL COHN, DEFENDANTS-RESPONDENTS.

Argued May 24, 1933—Decided September 27, 1933.

For the appellant, *Rothschild & Rothschild.*

For the respondents, *Saul & Joseph E. Cohn, pro se.*

The opinion of the court was delivered by

HETFIELD, J.   There are two appeals involved in this case, one of which is from a judgment of nonsuit in favor of the defendant Saul Cohn, directed by the trial court to be entered upon the opening of the plaintiff's case; the other from a nonsuit granted by the court in favor of the defendant Joseph E. Cohn, at the closing of the plaintiff's case.   The respondents are lawyers, and as partners practice law in the city of Newark.   The action was one for fraud and deceit, and was instituted against the respondents as individuals, the complaint being silent as to the partnership.   The complaint alleges in substance, that the appellant was a client of the respondents, and was induced to enter into certain trans-

actions with one Pincus Gladstone, another client of the respondents, whereby he conveyed considerable property and caused money to be advanced to a stated corporation, by reason of certain representations made by the respondents, which they knew to be false, and intended that plaintiff should act thereon to his prejudice; and that the respondents, for the purpose of deceiving the appellant, and persuading him to enter into the said transactions, concealed certain facts with respect to the equities in certain properties, so that the respondents, and some of their clients would be benefited thereby, which conduct on the part of the respondent, resulted in a great loss to the appellant.

We think the court's action, with respect to the respondent Saul Cohn, was proper. The record shows that the opening statement of the plaintiff's counsel did not contain any fact which, if proved, would have entitled the plaintiff to have the case submitted to the jury. All of the facts which were proposed to be proved as to Saul Cohn, did not in any way involve or connect him with any of the transactions had between the parties referred to in the complaint, and they were not sufficient to sustain the cause of action. It was mentioned in the opening, that Gladstone was a client of Joseph and Saul Cohn, and in another part, that the appellant had on one occasion called on Saul Cohn, and "got no satisfaction." The opening clearly indicated that all of the negotiations and transactions had between the parties involved in this litigation were with Joseph Cohn, and it is quite clear to us, that the facts stated would not justify a verdict. The appellant relies upon the case of *Donnelly* v. *Paramount Organization, Inc.*, 109 *N. J. L.* 57, where immediately at the close of defendant's opening, the court, on its own motion, directed a verdict for the plaintiff, without intimating that it intended to do so, or hearing from either counsel, and it appeared that the attorney for the defense, in the opening, neglected to state that a certain document had been forwarded by the defendant, which was a material factor in the case, and by reason of this omission, the court made its ruling, and counsel was not permitted to speak until after the jury had returned

its verdict in accordance with the court's instructions. This court did not approve of such action, and ordered a reversal. We do not think that the case referred to is in point with the one now being considered, as counsel, after a rather lengthy opening, neglected to connect the defendant Saul Cohn with the acts complained of, and when the motion for nonsuit was made by defendant's counsel, the plaintiff's attorney had an opportunity to answer, but simply stated "to which of course I object, because the defendants admitted that Saul Cohn and Joseph E. Cohn were partners," after which objection he realized the court was about to grant a nonsuit, and then requested the privilege of enlarging his opening. Suit was not instituted against the partnership, nor was there any mention in the opening of such relations between the defendants. No new facts were stated to the court in the argument of counsel, or has since been mentioned in the main case against Joseph Cohn, which would in any way materially change or enlarge the statement at the opening. When the court is satisfied that, conceding all the inferences which could be drawn from the stated facts in the plaintiff's opening, the proofs would be insufficient to warrant a verdict, it should direct a nonsuit.

The proofs presented against Joseph Cohn at the close of the plaintiff's case, show that sometime in November, 1924, the plaintiff made arrangements with one Pincus Gladstone, whereby they were to pool the interest which each had in certain real estate, and cause same to be conveyed to a corporation, with the purpose that the properties could be better managed to the advantage of both. In addition the plaintiff was to obtain for the corporation, a loan of $20,000 from his mother-in-law, Bertha Janower, which was to be used in financing the different properties. Pursuant to the arrangement, a memo was prepared by the plaintiff, indicating the different properties which would be conveyed, and the cash to be furnished, which was signed by Gladstone, but not by the plaintiff. The defendant Joseph E. Cohn had no knowledge of these negotiations, until after the said memo had been prepared and signed, at which time, both parties called at

his office to discuss the proposition, and it appears that from then on Cohn represented both parties. When the plaintiff was questioned as to what occurred at the first visit to Cohn's office, he stated: "I asked Mr. Cohn's opinion of the deal and he thought that it was very good because, as he said, Mr. Gladstone was a very good salesman and he thought I would run all these properties very carefully. Then I asked Mr. Cohn to search these properties for me, which he said he would do. Mr. Gladstone then remarked that he knew all about those properties because he had been handling them for him." The plaintiff further testified that late in November, he placed in Cohn's hands certain mortgages, for the purpose of having same assigned to the corporation; and that he again requested the defendant to search the properties which were to be conveyed to the corporation by Gladstone; and that Cohn stated to him, in reply to an inquiry, that Gladstone was trustworthy and reliable. The corporation used to carry out the purpose of the plaintiff and Gladstone, was the Newstone Realty Company, which it appears, was organized sometime in May, 1924, by Gladstone, Saul Rubinow and Antoinette E. Jock. The plaintiff testified that he had no knowledge that such a corporation existed until sometime in January, 1925, although the proof shows that he signed stock certificates and mortgages as president of the corporation, in November, 1924. It further appears that the money loaned by Mrs. Janower, together with other moneys received, was placed in Cohn's hands, as trustee, to be distributed for the benefit of the corporation, and that it was disbursed in financing the different properties conveyed to the corporation by Gladstone; and there was proof that this was done under the direction of both the plaintiff and Gladstone. There is also testimony to the effect that several of the properties which Gladstone was to contribute toward the enterprise, were not as represented, some being under foreclosure, and the titles of others being defective. All of these facts could in all probability have been discovered had there been a thorough examination of the title to each property, which apparently was not done, although Cohn had been

instructed to perform this service. The plaintiff had knowledge of some of Gladstone's misrepresentations as early as January 7th, 1925, at which time he entered into an agreement with one Rabinowitz, who it was claimed had an interest in some of the properties of which Gladstone represented he was the sole owner. This agreement was not drawn by the defendant, but by an attorney, Morris Isserman, who had been recommended by Cohn to the plaintiff, to attend to much of the detailed work relating to the Newstone Realty Company, for the reason that Cohn did not have the time to attend to same. It appears that Cohn had no knowledge of this agreement until after it had been prepared and executed. The proof also indicates that the plaintiff and Gladstone did not enter into a formal agreement with respect to the detailed arrangements which existed between them, until March 17th, 1925; and it is apparent that before the execution thereof, the plaintiff had knowledge of Gladstone's misrepresentations, and so reported to Cohn, who, it will be recalled, represented both parties. The plaintiff testified, that the defendant, when told of Gladstone's actions, replied that he knew of these facts, and that everything would be straightened out, because Gladstone had other property which Cohn would see that he used, in order to make up the deficiencies. The defendant apparently attempted to carry out this purpose, because section 10 of the agreement, which was prepared by the defendant, reads as follows: "It is further agreed that it is the intention of this agreement that both parties shall contribute equally to the assets of the corporation as hereinbefore set forth, and, in the event that either party furnishes an amount of assets greater than the other, that such excess shall be credited to him, and that interest be paid him out of the funds of the corporation at the rate of six per cent. per annum, payable annually."

There is no evidence to indicate that the defendant, by any act of his, endeavored to induce the plaintiff to enter into the arrangement which no doubt resulted in a heavy loss. Neither is there any proof that Cohn knew that Gladstone was in any way unreliable or dishonest. There is no testi-

mony to show that Cohn disbursed any of the money placed in his hands, as trustee, for any purposes other than those which were for the benefit and advantage of the Newstone Realty Company. It may be that he was negligent and careless in permitting the transfers of the properties to be made before having more knowledge as to the condition of the titles. Nevertheless, this does not constitute fraud; and we can find no evidence of any act on the part of the defendant, which was committed with intent to deceive the plaintiff, or to induce him to enter into any of the dealings with Gladstone. It is a well-settled principle, that to maintain an action at law, for deceit, the representation must be shown to be not only false in fact, but false to the knowledge of the person making it; in other words, fraudulent (*Cowley* v. *Smyth*, 46 *N. J. L.* 380; *Eibel* v. *Von Fell*, 63 *Id.* 3; *affirmed*, 64 *Id.* 364); but where a representation is untrue, and made without knowledge as to whether it is true or false, it is sufficient to sustain an action of this character. *Plimpton* v. *Friedberg*, 110 *Id.* 427.

However, a mere breach of duty or the omission to use due care, without the element of intentional fraud, will not sustain an action for deceit; and when the law, upon the undisputed evidence, precludes any recovery whatever against the defendant, for that reason, a judgment of nonsuit is proper.

Several other grounds of appeal advanced by the appellant, relating to the rulings of the trial court, have been considered, but we do not think they merit any further discussion, as the trial court's action in each instance, appears to have been proper.

The judgments under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.